IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                                                                                              Case No. 2:91-cr-165

Daniel Blue

<u>Opinion and Order</u>

Defendant was indicted in 1991 on one count of being an Armed Career Criminal in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). A jury found defendant guilty and he was sentenced to a period of 262 months imprisonment, consecutive to other state court sentences. Defendant is presently serving his federal sentence at the Federal Correctional Institution in Hazelton, West Virginia and is scheduled to be released in May 2026. *See* Doc. 12 at PAGEID 173.

This matter is before the Court on defendant's motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018. Defendant argues that he should be considered for compassionate release because he is immunocompromised and in a high-risk category with respect to COVID-19. Defendant further states that he has completed vocational training while incarcerated.

The government opposes the motion for compassionate release. The government argues that defendant is not in a high-risk category and that there are currently few, if any, cases of COVID-19 at FCI Hazelton. The government points out that defendant refused to receive a COVID-19 vaccine despite having no medical contraindication for the vaccine. The government also opposes compassionate release on the grounds that defendant committed violent crimes and has had two recent infractions, including threatening bodily harm to another inmate.

I.        **Standards for Compassionate Release**

A court may reduce a sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. *See United States v. Jones*, 980 F.3d 1109, 1111 (6th Cir. 2020). The court must also consider the factors set forth in 18 U.S.C. § 3553(a) to the

1

extent that they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A). If, after weighing the § 3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment." *Id.* The grant of compassionate release is at the discretion of the court. *United States v. Kincaid*, 802 Fed. App'x 187, 188 (6th Cir. 2020).

Although §3582(c)(1)(A) also requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" found in the United States Sentencing Guidelines, §1B1.13 and Application Note 1, the Sixth Circuit has held that the policy statements do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define what constitutes an "extraordinary and compelling" reason without consulting the policy statement. *See Jones*, 980 F.3d at 1111. Therefore, the court will not base its decision on whether defendant's reasons for release satisfy the policy statements.

## II. Medical Conditions

Defendant, who is 67 years old, alleges that he has medical conditions which place him at high risk for serious illness from COVID-19. He states that he has a comprised immune system. In support, he asserts that he has rheumatoid arthritis in his right shoulder and neck, as well as a low white blood cell count. He also states that he suffers from anxiety.

According to the Centers for Disease Control, age is a strong risk factor for "severe COVID-19 outcomes." *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. Those who are ages 65–74 years are at higher risk than those ages 50–64 years. *Id.* The CDC also advises that individuals with an immunocompromised condition or weakened immune system are at a greater risk of serious illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#MedicalConditionsAdults. The CDC defines rheumatoid arthritis as "an autoimmune and inflammatory disease, which means that your immune system attacks healthy cells in your body by mistake, causing inflammation (painful swelling) in the affected parts of the body." *See* https://www.cdc.gov/arthritis/basics/rheumatoid-arthritis.html#what-is. White blood cells "are part of the body's immune system" and "help the body fight infection and other diseases." *See* https://www.cancer.gov/publications/dictionaries/cancer-terms/def/white-blood-cell.

The government does not dispute that an individual of defendant's age with certain medical conditions would be at an increased risk of serious illness from COVID-19.  But the government disputes defendant's assertions about being immunocompromised.  The government's point is well-taken.

The medical records submitted by defendant show that he has osteoarthritis, not rheumatoid arthritis as he claims.  *See* Doc. 8-1 at PAGEID 90, 92–93 (results of x-rays showing "moderate osteoarthritis" in defendant's right shoulder).  The Court takes judicial notice that while rheumatoid arthritis is an autoimmune disease, osteoarthritis is caused by mechanical wear and tear on a joint. *See* https://www.mayoclinic.org/diseases-conditions/arthritis/multimedia/osteoarthritis-vs-rheumatoid-arthritis/img-20008728.  Defendant was prescribed with periodic cortisone injections to treat his osteoarthritis.  *See* Doc. 8-1 at PAGEID 90.  The medical records also contradict defendant's assertion that he has rheumatoid arthritis in his neck.  According to the records, he has degenerative changes with osteophytes, or bone spurs, in certain vertebrae in his neck.  *See id.* at PAGEID 96–97.

As to defendant's assertion regarding a low white blood cell count, he has not submitted medical evidence showing that he has been diagnosed with this condition or is receiving treatment for it.  It appears that defendant's belief about having a low white blood cell count stems from the result of a blood test.  *See* Doc. 8-1 at PAGEID 110.  It is unclear for what purpose the blood test, dated March 26, 2020, was conducted.  Among the results under the category of "Hematology" is one for "WBC," which presumably refers white blood cell count.  A result of 3.6 K/ul is listed.

Without more, the Court cannot reach a conclusion that the test result for defendant's white blood cell count shows that he is immunocompromised to the point that it constitutes an extraordinary and compelling reason for his release.  The test result appears to be borderline low. *See* https://www.mayoclinic.org/symptoms/low-white-blood-cell-count/basics/definition/sym-20050615 (stating that 3.5 K/ul and below is consider low).  More importantly, the test was conducted three years ago and is a snapshot in time.  *See* https://www.mayoclinic.org/symptoms/low-white-blood-cell-count/basics/causes/sym-20050615 (some causes of a low white blood cell count include temporary conditions or reactions, such as an infection, malnutrition, a side effect to

medication, or a side effect to undergoing certain types of therapy). There is no evidence that defendant has a low white blood cell count now, nor is there any evidence that he received a diagnosis or treatment based on the 2020 test result.

Finally, defendant claims to suffer from anxiety and says he has been prescribed meloxicam to treat his anxiety. There is no evidence in the medical records that defendant suffers from anxiety. And though there is evidence that defendant takes meloxicam, *see* Doc. 8-1 at PAGEID 89, it is a drug commonly used to treat arthritis. *See* https://www.mayoclinic.org/drugs-supplements/meloxicam-oral-route/description/drg-20066928. Furthermore, anxiety is not among the mental health conditions which the CDC lists as putting an individual at a greater risk of serious illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#MedicalConditionsAdults.

In sum, the Court finds that defendant's age and medical conditions of record do not constitute an extraordinary reason for his early release. Defendant is incarcerated at FCI Hazelton. Vaccines have been administered to over 3,400 inmates and 480 staff at FCI Hazelton. *See* https://www.bop.gov/coronavirus/covid19_statistics.html (last checked April 5, 2023). At the time of defendant's motion, there were no COVID-19 cases at the facility; there are presently only 3 cases. *Id.* This substantially undermines defendant's motion for compassionate release, *see United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021), and defendant has not shown that his physical and mental health care needs will not be adequately cared for at FCI Hazelton.

**III.    Rehabilitation**

Defendant also relies on his efforts towards rehabilitation. "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. *See* 28 U.S.C. § 994(t). However, rehabilitation may be considered along with other circumstances in deciding whether extraordinary and compelling reasons for early release exist. *See United States v. Daley*, 484 F.Supp.3d 1171, 1175 (M.D. Fla. 2020).

Defendant has submitted proof that he successfully completed certain vocational training while at FCI Hazelton, including forklift operator training and commercial driver's license training. *See* Doc. 8-2.

While defendant's training is commendable, the Court is concerned by proof that in May and June 2022 defendant committed rules infractions. *See* Doc. 12 at PAGEID 182. One incident involved his refusal to obey an order. Another involved his threat of bodily harm to another inmate.

Accordingly, the Court concludes that the above circumstances relating to defendant's rehabilitation do not constitute an extraordinary and compelling reason for defendant's release.

### IV.     Section 3553(a) Factors

The Court must also address the applicable §3553(a) factors. The offense in this case was serious. In February 1991 defendant used a stolen firearm to rob a coin laundromat in Columbus, Ohio. Defendant forced the clerk to open the register and then locked the front door. He forced the clerk to the back room, tied her hands and feet together and placed duct tape over her mouth. Defendant took her wallet and $191 from the register and fled. In a nearby neighborhood, defendant was confronted by an individual who said he was going to call the police. Defendant pulled the firearm on the victim, struck him on the head with it and continued to beat the him while he was on the ground. *See* Presentence Investigation Report, ¶¶ 3–8.

As to the history and characteristics of the defendant, the Court commented in sentencing defendant that "his long history of violent crime leads the Court to believe he cannot be rehabilitated and the sentence [of 262 months imprisonment] is required to protect the public." *See* March 25, 1992 Judgment. In 1974, at the age of 18 years old, defendant was convicted of four charges, including Felonious Assault and multiple counts of Armed Robbery. Defendant robbed multiple stores at gun point and during one robbery, he sexually assaulted an employee and placed other employees in a locked cooler.

Months after his release on parole, we was arrested again in 1979 and was later convicted of Aggravated Robbery, Felonious Assault, Kidnapping and Aggravated Burglary.

Within one year of being released on parole, defendant committed the offense for which this Court sentenced him. Defendant was also charged and convicted in the Franklin County Court of Common Pleas on counts of Aggravated Robbery, Kidnapping and Felonious Assault.

As to his history and characteristics, defendant argues that he poses a low risk of recidivism because of his age. The Court finds that this assertion is undermined by defendant's recent prison

5

infractions, particularly his threat of bodily harm to another inmate.  *See also* Doc. 12 at PAGEID 182 (showing past history in prison of fighting with an inmate).

The Court concludes that consideration of the § 3553(a) factors militate against defendant's early release.

**V.     Conclusion**

Accordingly, defendant's motion for compassionate release (Doc. 8) is DENIED.


Date: April 6, 2023                                                                s/ James L. Graham
                                                                                               James L. Graham
                                                                                               United States District Judge